UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,

    Plaintiff,

v.                Case No. 8:10-CV-92-T-17MAP

DANCING $, LLC,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case emanates from a Securities and Exchange Commission enforcement action aimed at dealing with the aftermath of a massive Ponzi scheme perpetrated by Arthur Nadel, a hedge fund manager.[1] The receiver appointed in that action, Burton W. Wiand ("Wiand") has sued numerous hedge fund investors, like Dancing $, LLC (hereinafter "Dancing $"), demanding the return of their "false profits" under the same two theories: the Florida Uniform Fraudulent Transfer Act ("FUFTA"; *see* Fla. Stat. 726.101, *et seq.*) and unjust enrichment. Dancing $ has now moved to dismiss the complaint against it pursuant to Rule 12(b)(6) (doc. 23) claiming Wiand lacks standing to bring an action under FUFTA and lacks standing to assert claims of unjust enrichment of other investors under the unjust enrichment claim. After consideration, I

---

[1] *See Secs. and Exch. Comm'n v. Arthur Nadel, et al.,* Case No. 8:09-cv-87-T-26TBM.

recommend the motion be denied for the reasons set forth below.[2]

*A. Background*

On January 21, 2009, the district judge in the enforcement action appointed Wiand as the receiver for various entities in receivership and directed him, *inter alia*, to "institute such actions and legal proceedings, for the benefit and on behalf of the Defendants and Relief Defendants and their investors and other creditors as the Receiver deems necessary…provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute[s] § 726.101, et seq. or otherwise, rescission and restitution…" *Secs. and Exch. Comm'n v. Nadel et al.*, No. 8:09-cv-87-T-26TBM, doc. 8 at 2-3.[3] Following those instructions, Wiand initiated this action on January 13, 2010, to recover money transferred to Dancing $ from one of the receivership entities, asserting claims under the FUFTA and for unjust enrichment/false profits.

The relevant details of the money transfers at issue are straightforward. On October 2, 2006, Dancing $ invested $250,000 in Scoop Capital, LLC ("Scoop") (doc. 1, Exhibit A). Thereafter, on July 2, 2007, Dancing $ invested $25,000 in Scoop, and on August 31, 2007, Dancing $ invested $100,000 in Scoop (doc. 1, Exhibit A). On January 11, 2008, Dancing $ received distributions from its investments in the amount of $434,359.29 (doc. 1, Exhibit A). On November 6, 2006, Dancing $ invested $250,000 in Valhalla Investment Partners, L.P. ("Valhalla"), and on January 3, 2007, Dancing $ invested $50,000 in Valhalla (doc. 1, Exhibit

---

[2] Per 28 U.S.C. § 636 and Local Rule 6.01(b), the district judge referred these matters to me for a report and recommendation.

[3] The district court judge reappointed Wiand on June 3, 2009 (doc. 140).

A). Dancing $ received distributions from its investments in the amount of $346,234.60 on January 11, 2008, and $1,569.82 on April 11, 2008 (doc. 1, Exhibit A). The complaint seeks recovery of the false profits, $59,359.29 as to Scoop and $47,812.82 as to Valhalla, that Dancing $ received in excess of its investments.

### B. Rule 12(b)(6) standard

The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in detail the facts upon which he bases his claim. Instead, all that ordinarily is required is that the claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007) citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss per Rule 12(b)(6), the complaint must allege sufficient facts, which are assumed to be true, to state a facially plausible claim, namely, one that allows the court to draw the reasonable inference that the defendant is liable for the misconduct averred. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

### C. Discussion

#### 1. FUFTA

Dancing $ argues the FUFTA claim fails to state a claim upon which relief may be granted because a FUFTA claimant must allege he has a "claim" which qualifies him as a "creditor" of the entity or individual who is transferring or attempting to transfer funds to thwart the creditor's attachment. Dancing $ posits that an equity receiver may not pursue fraudulent transfer claims owned by the creditors of the receivership entities because the receiver is not the

3

class representative for creditors and receives no general assignment of rights from the creditors. However, consistent with FUFTA, the complaint alleges facts showing that Wiand, the receiver, sues on behalf of each of the Hedge Funds, that each of the Hedge Funds has claims against and is thus a creditor of Nadel; that Nadel is the debtor; and that Nadel is the transferor under FUFTA. Hence, the complaint explicitly identifies the receivership entities as creditors, the wrongdoer, Nadel, as the debtor, and the creditor's claims against the debtor arising from the Ponzi scheme perpetrated by the debtor, Nadel, through the creditors. *See* doc. 1, ¶¶ 22, 29, 36, 42, 48, 55, 106, 107.

In describing the scheme, the complaint alleges that Nadel improperly and wrongfully diverted money invested with the Hedge Funds by causing those entities to make transfers to pay "fees" and to pay purported investment profits and principal redemptions to investors, including Dancing $, to perpetuate his Ponzi scheme for the benefit of himself and others (*id.,* ¶¶ 19, 21, 26, 28, 33, 41, 52, 54, 66, 73, 85-98). The complaint further alleges Nadel effected the transfers through his control of the Hedge Funds, and it is from Nadel's conduct that claims arose by each Hedge Fund against Nadel for breach of fiduciary duty, fraud, conversion, and/or other violations of law. Thus, the allegations establish that each Hedge Fund is a "creditor" of Nadel and that Nadel is a "debtor" as defined under FUFTA (*id.,* ¶107).

Courts have recognized that when a Ponzi scheme's perpetrator diverts money that investors intended to invest with a receivership entity, the entity is harmed, even if the entity is controlled by the scheme's perpetrator and used exclusively to perpetrate the scheme.[4] For

---

[4] *See generally Knauer v. Jonathon Robert Fin. Group,* 348 F.3d 230, 235 (7th Cir. 2003) ("As long as an entity is legally distinct from the person who diverted funds from the entity, a receiver for the entity has standing to recover the removed funds."); *Goldberg v. Chong,*

4

example, in *Scholes v. Lehmann*, the court noted that "the appointment of the receiver removed the wrongdoer from the scene" such that the receivership entities were no longer the Ponzi scheme principal's "evil zombies." 56 F.3d at 754. Freed from the principal's "spell" the entities "became entitled to the return of the moneys – for the benefit not of [the principal] but of innocent investors – that [the principal] had made the [entities] divert to unauthorized purposes." *Id.* In finding that the receiver had standing to bring fraudulent transfer claims, the *Scholes* court stated:

> Now that the corporations created and initially controlled by [the Ponzi scheme principal] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors, we cannot see an objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated by [the principal].

*Id.* at 755. Wiand's allegations describe this type of scheme: he alleges Nadel, as perpetrator, diverted funds and that the receivership entities were harmed (doc. 1, ¶¶ 107-113).

Courts have consistently allowed receivers to file similar FUFTA "clawback" causes of action. *See generally Dillon v. Axxsys, Int'l, Inc.,* 185 Fed. App'x 823, 830 (11th Cir. 2006)

---

No. 07-20931-CIV, 2007 WL 2028792, *4 (S.D. Fla. July 11, 2007) ("TEGFI [a receivership entity], as a creditor alleging a claim against a debtor, has standing to bring a FUFTA claim against Defendants [recipients of receivership entity money or proceeds]. The Receiver, having been so authorized by the Court, has standing to assert claims on TEGFI's behalf"); *Quilling v. Grand St. Trust,* No. 3:04-cv-251, 2005 WL 1983879, *5 (W.D.N.C. Aug. 12, 2005) (finding receiver had standing to assert fraudulent transfer claims on behalf of corporate entities owned or controlled by Ponzi scheme operator from whom assets were fraudulently transferred); *Marwil v. Farah,* No. 1:03-CV-0482-DFH, 2003 WL 23095657, *7 (S.D. Ind. Dec. 11, 2003) (quoting *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995), and finding receiver, as representative of receivership entity, had standing to bring equitable disgorgement claim arising from fraud on receivership entity that Church operated to receivership entity's damage); *Obermaier v. Arnett*, No. 2:02-cv-111-FTM29DNF, 2002 WL 31654535, *3 (M.D. Fla. Nov. 20, 2002) (holding receiver could assert fraudulent transfer and unjust enrichment claims against beneficiaries of alleged Ponzi scheme to redress injuries to receivership entities).

(finding that once the principals decided to use the plaintiffs' money for non-business purposes, i.e. transferring assets to their own account, the plaintiffs became creditors and possessed a viable claim according to FUFTA.); *Warfield v. Byron,* 436 F.3d 551, 554-55 (5th Cir. 2006) (allowing receiver to bring UFTA claims against individuals and entities to recover receivership assets where Ponzi scheme operator caused receivership entities to effect transfers); *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274, 1277 (7th Cir. 1997) citing *Scholes, supra,* 56 F.3d at 753-54 (recognizing that "receiver, who had also been appointed the corporations' receiver, had standing to sue on behalf of the corporations, because they were entitled to the return of the money that the defrauder had improperly diverted from them"); *Scholes, supra,* 56 F.3d at 753-54 (7th Cir. 1995) (finding receiver Scholes had standing to bring fraudulent conveyance action against investors); *In re Burton Wiand Receivership Cases Pending in the Tampa Div. of the Middle Dist. of Fla.,* Nos. 8:05-cv-1856-T-27MSS, *et al.*, 2008 WL 818504, *4 (M.D. Fla. March 26, 2008) ("*Waxenberg II*") (denying motion to dismiss receiver's amended FUFTA claims against debtors because debtor's transfer of receivership entities' assets constituted transfer of "property of the debtor"); *Warfield v. Carnie*, Civil Action No. 3:04-cv-633-R, 2007 WL 1112591, *9 (N.D. Tex. 2007) ("A receiver of an alleged Ponzi scheme may sue under the UFTA to recover funds paid from the entity in a receivership"); *Quilling v. Cristell*, No. Civ.A. 304CV252, 2006 WL 316981, *6 (W.D. N.C. 2006) (finding "once Receiver was appointed, the [Ponzi scheme entities] were freed from control of [the Ponzi scheme operator] and the [entities] became entitled to the return of the funds that were wrongfully diverted to the Defendants ... Receiver, as receiver for all entities owned or controlled by [Ponzi scheme operator] including the [Ponzi scheme entities] properly has standing to bring fraudulent transfer claims that he is

6

asserting against Defendants.").

Here, the complaint sufficiently pleads a cause of action arising from a constructively fraudulent transfer. A transfer is fraudulent under a theory of constructive fraud if the transferor does not receive reasonable value in exchange and the transferor either (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the transferor were unreasonably small in relation to the business or transaction; (2) intended to, believed, or reasonably should have believed that he or she would incur debts beyond his or her ability to pay them as they became due; or (3) was insolvent at the time of the transfer. *See* Fla. Stat. §§ 726.105(1)(b)(1)-(2) and 726.106(1). The complaint alleges neither the Hedge Funds nor any other person or entity received reasonably equivalent value in exchange for the transfers to Dancing $. *See* doc. 1, ¶ 111. As Wiand notes in opposition to Dancing $'s motion to dismiss, FUFTA allows a creditor to avoid a debtor's fraudulent "transfer" of property. FUFTA defines a "transfer" as "every mode direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Fla. Stat. § 726.102(12). An "asset" is defined as "property of the debtor" Fla. Stat. § 726.102(2). The allegations establish that the funds transferred to investors such as Dancing $ as part of Nadel's scheme, including those funds transferred to Dancing $, constitute "property of" Nadel under FUFTA because they are available to pay the debt owed by Nadel to each of the Hedge Funds arising from Nadel's operation of a Ponzi scheme. Hence, upon review, I find that the allegations state a FUFTA claim based on

constructive fraud, and are pled with sufficient specificity.[5]  Accordingly, I recommend the motion to dismiss be denied.

2. *Unjust enrichment*

Similarly, Dancing $ argues that Wiand cannot pursue an unjust enrichment claim because the enrichment was unjust only to the investors in the Hedge Funds, and not to the Hedge Funds themselves.  In other words, Dancing $ asserts Wiand may not pursue claims owned by creditors of the receivership entities.  As set forth above, however, in a Ponzi scheme, the Ponzi scheme operator removes assets from the receivership entities for an unauthorized purpose, and thus, injures the entities. *See Scholes, supra,* 56 F.3d at 754.  When the Ponzi scheme operator fraudulently transfers funds from an entity underlying the scheme to a third party, the entity itself is injured, separate and apart from the injury to the entity's investors. *See, e.g., Zayed v. Buysse,* No. 11-CV-1042 (SRN/FLN), 2011 WL 2160276, *5 (D. Minn. June 1, 2011) (finding receiver had standing to bring unjust enrichment and fraudulent transfer claims against investors because "the receivership entities were also victims of the fraud and are, like the defrauded investors, tort creditors of Cook's Ponzi scheme"); *Steinberg ex rel Lancer Management Group LLC v. Alpha Fifth Group,* No. 04-60899-CIV, 2010 WL 1332840, *4 (S.D. Fla. 2010) (finding receiver of newly "cleansed" receivership entities stated claim for undue

---

[5] As Wiand indicates, Dancing $'s arguments to the contrary are unavailing.  The cases cited by Dancing $, *Pearlman v. Alexis,* No. 09-20865-CIV, 2009 WL 3161830 (S.D. Fla. Sept. 25, 2009), *Court-Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group LTD,* No. 05-60055-CIV, 2008 WL 926506 (S.D. Fla. Mar. 31, 2008) and the original complaints in *Waxenberg I, In re Burton Wiand Receivership Cases Pending in the Tampa Div. of Middle Dist. of Fla.,* Nos. 8:05-cv-1856-T-27MSS, *et al.*, 2007 WL 963165, *4 (M.D. Fla. March 27, 2007) are distinguishable because the allegations in the complaints were deficient and the one before the Court is not.

enrichment because he could assert claims against "evil zombie" management company which wrongfully dissipated funds from receivership entities); *Wing v. Hammons,* No. 2:08-cv-00620, 2009 WL 1362389, *3 (D. Utah May 14, 2009) (denying motion to dismiss receiver's unjust enrichment claim against "winners" of Ponzi scheme for lack of standing because "entities were injured when [Ponzi scheme operator] used them to commit fraud and waste ... once [Ponzi scheme operator] was removed from the scene, those entities, now under auspices of the Receiver, are entitled to seek the return of these fraudulently dissipated payments.").

      Here, Wiand alleges that when investors, such as Dancing $, received distributions of funds from Nadel's Ponzi scheme, the investors received a portion of the other investors' commingled funds, pushing the underlying entities deeper into insolvency (doc. 1, ¶¶16, 82-104, 114-119). Wiand asserts that the harm to the Hedge Funds is evident when investors, like Dancing $, receive distributions from the Ponzi scheme that are greater than the amounts invested. Other courts have recognized that a Ponzi scheme is insolvent from its inception, and becomes increasingly insolvent as the scheme progresses. *See Cunningham v. Brown,* 265 U.S. 1, 8 (1924) (stating that due to the nature of his scheme, Charles Ponzi "was always insolvent, and became daily more so, the more his business succeeded"); *Warfield v. Byron,* 436 F.3d 551, 558 (5th Cir. 2006) ("a Ponzi scheme ... is, as a matter of law, insolvent from its inception."); *In re Financial Fed. Title & Trust, Inc.,* 309 F.3d 1325, 1332 (11th Cir. 2002) (noting that by definition a Ponzi scheme is driven further into insolvency with each transaction); *In re ATM Financial Services, Inc.,* Bankruptcy No. 6:08-bk-969-KSJ, 2011 WL 2580763, *6 (M.D. Fla. June 24, 2011) ("there is little debate that a company run as a Ponzi scheme is insolvent as a matter of law"). Upon consideration, I find that Wiand has stated a claim for unjust enrichment,

and recommend Dancing $'s motion be denied in this regard.

   D.  *Conclusion*

For the foregoing reasons, it is hereby

RECOMMENDED:

1.  Dancing $'s Motion to Dismiss Pursuant to Rule 12(b)(6) (doc. 23) be DENIED.

IT IS SO REPORTED at Tampa, Florida on November 21, 2011.

*[signature]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: Hon. Elizabeth A. Kovachevich
    Counsel of Record