UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,

          Plaintiff,

v.                                      Case No. 8:10-CV-92-T-17MAP

DANCING $, LLC,

          Defendant.

_____/

## REPORT AND RECOMMENDATION

      This clawback action is on remand from the court of appeals with instructions to the district court to reevaluate its denial of prejudgment interest and to "identify and apply the *Blasland* factors in order to determine whether the equitable considerations justify a denial or reduction of prejudgment interest to the Receiver in light of Florida's general rule that prejudgment interest is an element of pecuniary damages." *Wiand v. Dancing $, LLC*, No. 13-10851 (August 27, 2014) citing *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1297 (11th Cir. 2002); *see* docs. 141 (opinion) and 142 (mandate).[1]  Both sides now agree that *Blasland's* factors are inapplicable to our circumstances; nonetheless, I have considered *Blasland's* core message and recommend that prejudgment interest be awarded from the date of the filing of the complaint.[2]

---

    [1]  *Wiand v. Dancing $, LLC* is reported at 578 F. App'x 938 (11th Cir. 2014).

    [2]  The district judge referred this matter to me for a report and recommendation.  28 U.S.C. § 636; Local Rule 6.01(a).

*A. Context – facts and procedural history*

This case's factual backdrop and procedural history have been reported extensively in this Court's Order adopting my report and recommendation (docs. 128 and 121) and in the Eleventh Circuit's opinion (doc. 141) affirming this Court's judgment but for the denial of prejudgment interest. I borrow from those efforts only as needed to give context for evaluating, in accordance with the remand instructions, whether prejudgment interest should or should not be awarded.

In 1999 Arthur Nadel opened his first hedge fund to recruit investors; a decade later his scheme collapsed when the Securities and Exchange Commission moved in with an enforcement action, *see SEC v. Arthur Nadel, et al.,* Case No. 8:09-cv-87-T-26TBM. By then, he had opened other hedge funds (the receivership entities) and sucked in hundreds of unsuspecting investors to dump their money into his scheme. The overwhelming majority lost their shirts, but some serendipitously got back their principal and more. Dancing $, a Montana investment club, was one of those fortunate few. In January and April 2008, the club received disbursements totaling $107,172.11 above principal. Of course, its members, thinking they had invested smartly, presumed that money was theirs to keep. Little did they know.

The enforcement judge appointed the Receiver (Wiand) at the SEC's request, and he set about clawing back the net-winning investors' false profits, applying two tools that receivers commonly resort to in such circumstances – the Uniform Fraudulent Transfer Act ("UFTA"), which Florida has adopted (*see* Fla. Stat. § 726.105 *et seq.*) ("FUFTA"), and common law's unjust enrichment. *See* Complaint, doc. 1, filed January 13, 2010. This Court eventually issued a judgment in the Receiver's favor for the amount of the false profits but denied any prejudgment interest on that amount in view of the equities of the case. *See* doc. 129. Both sides appealed. The Eleventh Circuit

affirmed the judgment except for the denial of prejudgment interest, noting its earlier decision in a

companion clawback action, *Wiand v. Lee*, 753 F.3d 1194 (11th Cir. 2014), dictated the result.

Accordingly, the *Dancing $* panel issued the same remand instructions as the *Lee* panel did:

> identify and apply the *Blasland* factors in order to determine whether the equitable
> considerations justify a denial or reduction of prejudgment interest to the Receiver
> in light of Florida's general rule that prejudgment interest is an element of pecuniary
> damages.

*See Lee*, 753 F.3d at 1206.

### B.  Discussion

The remand directs the district court "to identify … the *Blasland* factors," stack those against

the general rule, and "apply" the rule accordingly.  Both sides now agree that none of *Blasland's*

factors apply, which makes stacking them against the general rule uninformative.  But this result is

inconsequential as *Blasland* clearly did not limit the equitable factors a court can consider to just

those *Blasland* identified.   And although *Blasland* scoured Florida cases for factors, that exercise

here is not particularly helpful because our circumstances are unlike those Florida courts see when

deciding awards of prejudgment interest in typical FUFTA matters.   Irrespective of all this,

*Blasland's* core message remains the appropriate guide for evaluating the rule's application to this

peculiar FUFTA action.

#### 1.  Blasland's factors – an illustrative list

To appreciate *Blasland's* factors, or how a factor became a "factor," *Blasland* reminds us of

the core reason for an award of prejudgment interest: "to provide the prevailing party with the time

value of the money it should have had at the time it was wronged – to restore the party to an

unwronged position."  *Blasland,* 283 F.3d at 1299.  That goal, however, is "not absolute and may

depend on equitable considerations." *Id.* at 1297, quoting *Broward County v. Finlayson*, 555 So.2d 1211, 1213 (Fla. 1990). *Blasland*, which dealt with a breach of contract as opposed to a FUFTA matter, culled three so-called factors from its review of Florida cases: whether the delay between the injury and judgment is the fault of the prevailing party; whether the prevailing party could have, but failed to, mitigate damages; or whether in choosing between innocent victims it would be equitable to put the burden of paying interest on the public. *Id.* at 1297-98 (citations omitted). But *Blasland* clearly implied that its list was not exhaustive as it considered a fourth factor that its Florida survey of cases had not uncovered (*i.e.,* the City had a well-founded malpractice claim against Blasland which precipitated the City's breach). *Id.* at 1298-99. At most, *Blasland's* list presents illustrative examples where courts have considered particular circumstances for deciding if the equities outweigh the proposition that money over time creates value and that value should be a compensable feature of the winning party's pecuniary damages. *Id.* 1298-99; *see also Millennium Partners, L.P. v. Colmar Storage, LLC,* 494 F.3d 1293, 1305 (11th Cir. 2007) (recognizing there is "extensive Florida caselaw making the right to recover prejudgment interest subject to equitable considerations") (citing *Perdue Farms, Inc. v. Hook*, 777 So. 2d 1047, 1054 (Fla. 1st DCA 2001)) ("Depending on the equities of a given case, an award of prejudgment interest may be a windfall to the plaintiff and an unfair burden on the defendant.")); *Volkswagen of America, Inc. v. Smith*, 690 So. 2d 1328, 1331 (Fla. 1st DCA 1997) ("The *Argonaut* decision did not establish an inflexible rule that requires trial judges to assess prejudgment in every case regardless of circumstances.") (citing *Finlayson,* 555 So. 2d at 1213) ("Interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable."). Correctly striking that balance – the rule's goal against

4

the equities particular to the case – is *Blasland's* succinct directive.  While the rule's purpose, to restore the prevailing party from the date of the wrong, always informs the court's consideration of the equities at play, that goal does not always trump every identifiable equity.  One case might fall into the general rule box (owing to the rule's presumption); another might not (owing to the presumption's rebuttal).  No matter the outcome – to award prejudgment interest, or to reduce the award, or to reject an award – the decision is the district judge's to make within her sound discretion. *Blasland* plainly says as much:

> When a district court has discretion, there are usually a range of choices it may make and still be affirmed; there is not only one right choice for the court to make.  Accordingly, in determining whether a district court has abused its discretion, we sometimes will affirm even though, had the case been ours to decide in the first instance, we would have reached a different result than the district court.

283 F.3d at 1298.

### 2.  FUFTA, clawback peculiarities, and remand instructions

FUFTA speaks to a debtor's fraudulent transfers, ones made with "actual intent to hinder, delay, or defraud" the debtor's creditor (actual fraud), or ones made without an appropriate *quid pro quo* (constructive fraud).  FLA. STAT. § 726.105(1)(a), (b).  The usual example involves a debtor who transfers assets to an insider.  The collusive nature of the transaction connotes the obvious: a "badge of fraud," a rebuttal presumption FUFTA supplies for determining actual intent.  *See* Fla. Stat. § 726.105(2)(a-k); *see generally Amjad Munim, M.D., P.A. v. Azar*, 648 So.2d 145, 152 (Fla. 4th DCA 1994) (discussing the statutory "badges of fraud").  For such transfers, the equities will rarely if ever favor the insider-transferee, and courts (as they should) routinely measure prejudgment interest from the date of the transfer.  This result gives the creditor what he deserves – the time-value of money that should have been his.  The debtor's obliging transferee gets his just deserts.  In contrast, our

transferee, Dancing $, is no insider.  And although the transfers to it above its principal payment are within FUFTA's reach, Dancing $ nonetheless remains an unwitting participant in a fraudulent event.  That context, which informs the equities at stake, is a factor when considering the purpose of Florida's prejudgment rule.

Clawback cases borrow from UFTA's logic, but the fit is far from intellectually perfect. Despite the imperfection, clawbacks are a creature of the enforcement action aimed at serving that proceeding's equitable goals.  In short, the Receiver serves as the enforcement court's equitable tool, and FUFTA serves as the Receiver's legal tool to recoup false profits and receivership assets.  This partnership validates the enforcement action's equitable existence – "the ratable distribution of remaining assets among all defrauded investors." *Donell v. Kowell,* 533 F.3d 762, 770 (9th Cir. 2008).  And for this, equity justly demands that innocent winners in a Ponzi scheme should not be permitted to enjoy an advantage over later investors "sucked into" the scheme who were not so fortunate.  *Id.*  Thus, to do equity and achieve the desired result, courts in these types of cases create a construct that fits UFTA into the factual mix of a Ponzi investment.  The Receiver represents the receivership entities (in our case – the hedge funds); the evil wrongdoer (Nadel) is removed from the scene such that the receivership entities are no longer the Ponzi scheme principal's "evil zombies." *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995). Freed from the principal's "spell," the entities became entitled to the return of the moneys – not for the benefit of the principal, but for the innocent investors whose funds the principal had diverted for unauthorized purposes.  *Id.*

This context varies factually from the usual FUFTA prosecution in important respects.  The element of fraud, which FUFTA demands, takes a different route to the transfer.  The evil wrongdoer is not the usual evading FUFTA debtor, but the Ponzi schemer whom the court subtracts, save his

6

intent, from its FUFTA calculus.  Accordingly, while the usual FUFTA case looks for the statutory

"badges of fraud," the Eleventh Circuit has said that scouring our facts for "badges of fraud" is

unnecessary because a transfer "made in furtherance of a Ponzi scheme establishes actual intent to

defraud under § 726.105(1)(a) without the need to consider the badges of fraud." *Dancing $*, 578

F. App'x at 944, citing *Lee*, 753 F.3d at 1201.  For these reasons, the obliging transferee's motives

and character, which FUFTA typically demands be suspect, have no relevance even though he is as

innocent as any other debtor who is a victim to the scheme.  The only difference between the two

is that the clawback transferee is just not as victimized as his unfortunate cohort.  FUFTA permits

the innocent transferee to steer for the harbor of good faith, *see* Fla. Stat. 726.109(1), a defense that

simply reaffirms the good character of the transferee.  For clawback actions, however, an innocent

investor's intent is not a even a consideration.  Dancing $ has no good faith claim to a sum above

what it paid in consideration (its principal) for the transfers.  That above-the-principal sum was not

theirs to keep.  *Scholes*, 56 F.3d at 757.

These peculiar applications of UFTA are unique to enforcement actions because the equitable

model justifies clawing back an investor's false profits.  But even limiting the claw back to the false

profits is an arbitrary construct.  Every schemer's transfer, whether to a net-winner or a net-loser,

serves the schemer's effort to survive and avoid detection.  Accordingly, some courts reason that *all*

transfers are avoidable and both principal and profits should be dumped back in the receivership

estate for *pro rata* distribution to all investors.  *See e.g., SEC v. George*, 426 F.3d 786, 798-99 (6th

Cir. 2005) (winning investors should be required to return principal and profits).  The overwhelming

number of courts find this approach inequitable, unless the winning investor spotted the scheme's

red flags and jumped into the investment anyway.  *SEC v. Forte*, Civil Nos. 09-63, 09-64, 2009 WL

4809804 (E.D. Pa. Dec. 15, 2009).

This judicial evolution for dealing with massive Ponzi schemes halted by enforcement actions is instructive because the decision to claw back transfers (whether profits or principal or both) is a function of a district court's wide latitude in meeting the enforcement action's equitable goal of compensating, as best it can, the receivership-estate's claimants.  And to apply Florida's prejudgement's presumption across the board to all transferees would distort the equitable goal of the enforcement action, particularly when the character of the transferee, which FUFTA takes into account, is as innocent as his losing companion investor.

Unsurprisingly, neither side cites a Florida case with similar facts and I can find none. This makes looking for pre-approved factors, as the *Blasland* court did, to then determine how, or whether, a Florida court honors the notion that money over time should be credited as an element of damages in this setting, with equity as our guide, an impossible exercise.  And looking to Florida cases for guidance, other than the usual rule *Blasland* informs, minimizes the equities here.  If no Florida case speaks to similar facts, how is this Court to appropriately consider Florida's general rule in the manner Florida courts would?[3]

The Eleventh Circuit's remand cannot be read to say that the general rule is anything other than general, or to say that this Court must rigidly adhere to the general rule thereby entitling the Receiver to the interest calculated from the date of the clawed-back transfers.  If so, the remand would have simply instructed the Court to compute the sum.  Nor can the remand be read to say that

---

[3]  In interpreting Florida law, this Court looks to case precedent from the Florida Supreme Court, and where none is found, to Florida's intermediate courts absent some persuasive argument that the State's highest court would decide otherwise.  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014).

*Blasland*'s three factors (or four) are the only ones this Court should consider when *Blasland* plainly states the factors recited are not exclusive.[4]  Of course this makes the remand's instructions – to "identify and apply the *Blasland* factors in order to determine whether the equitable considerations justify a denial or reduction of prejudgment interest to the Receiver in light of Florida's general rule that prejudgment interest is an element of pecuniary damages" – more enigmatic, particularly when both sides now agree that none of *Blasland's* factors apply here.  *See* doc. 144, p.6; doc. 146, p.2.

　　　　*3.  the arguments*

　　　　The Receiver essentially asserts that no equity favors Dancing $ (or at least the type of equity that Florida courts report) and no circumstance warrants deviating from Florida's general rule.  That view sees a "general" rule that is substantially more inflexible than *Blasland* opines – something very specific that universally applies except for those few inequitable situations *Blasland* covers.  Because *Blasland's* factors are inapplicable, the Receiver posits the general rule applies:  Nadel fraudulently transferred false profits to Dancing $ on January 1, 2008 ($105,602.89), and April 9, 2008 ($1,549.22); consequently, interest should be calculated as of then. *See* doc. 144, pp. 3-4.  But, if the Eleventh Circuit had determined as much, it would have so stated in its opinion and remanded the matter solely for the Court's computation.  Dancing $, on the other hand, asks this Court to consider its innocence.  It was an unwitting investor duped like the others who through the vagaries of chance happened to get out of the illegal scheme with more money in its pocket than it invested.  This Court recognized as much when first applying *Blasland*.  And that rationale, in part, served as the reason

---

　　　[4]  The *Dancing $* opinion must be read in harmony with *Blasland*.  To do otherwise would conflict with circuit precedent. *See Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998) (when circuit authority is in conflict, the earlier line of authority controls because a decision of a prior panel cannot be overturned by a later panel).

for denying the Receiver any prejudgment interest, a decision the Eleventh Circuit rejected.  In view of the circuit's remand, I cannot recommend that the district judge deny the Receiver any prejudgment interest.  Therefore, only the amount of prejudgment interest is at issue and that amount depends on the starting dates for its computation – either the dates of the transfers or some other date if the equities permit.

### 4.  amount of prejudgment interest

Per *Blasland*, the weight of equitable considerations may warrant a reduction in the amount of the prejudgment interest award.  *Blasland*, at 1297.  Having balanced the equities here, it would be unfair to permit the Receiver to recover prejudgment interest from January 11, 2008, and April 11, 2008, the dates of the transfers to Dancing $, in the amount of $37,967.48 for the reasons I have already stated.  *See* Complaint (doc. 1, Exhibit A); Yip declaration (doc. 145).  Instead, as other courts have concluded in similar Ponzi scheme fraudulent transfer actions in which the transferee had not engaged in culpable conduct, I find that equitable considerations justify a reduction of prejudgment interest and conclude that prejudgment interest should be awarded from January 13, 2010, the date the Receiver filed this action against Dancing $ and the first time Dancing $ received formal notice of the Receiver's claim.  *See Broward Cnty v. Finlayson*, 555 So. 2d 1211, 1212 (Fla. 1990) (adjusting prejudgment interest award commencement date based on equitable grounds).  *See generally In re Nat'l Consumer Mort., LLC,* case no. 2:10-cv-930-PMP-PAL, 2014 WL 1873960 (D. Nev. May 8, 2014) (concluding prejudgment interest should run from the date the Trustee filed the adversary action, because there was no evidence the transferee actually knew of or participated in the fraudulent scheme and because the transferee was apprised of the exact sum claimed due upon the filing of the adversary complaint); *LaBella v. Bains*, case no. 2012 WL 1976972 (S.D. Cal. 2012)

(citing *In re Slatkin*, 243 F. App'x 255, 259 (9th Cir. 2007)) (despite plaintiff's demand for prejudgment interest from dates of disbursements from Ponzi schemer, court awarded it from date action commenced against innocent investor); *In re Ramirez-Rodriguez*, 209 B.R. 424 (S.D. Texas 1997) (Ponzi scheme trustee entitled to prejudgment interest from commencement of action).

This conclusion is not inconsistent with Florida's general rule concerning the payment of prejudgment interest: "once damages are liquidated, prejudgment interest is considered an element of damages as a matter of law, and the plaintiff is to be made whole from the date of the loss." *See Finlayson,* 555 So .2d at 1211 (quoting *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212 (Fla. 1985)).  In *Finlayson*, the Florida Supreme Court found it would be unfair to permit emergency medical technicians to recover interest for the time period preceding the date of their first demand for overtime compensation, and rejected the argument that prejudgment interest should date back to when the wages accrued. *Finlayson*, at 1213-1214 (citing *Ball v. Pub. Health Trust of Dade Cnty.*, 491 So. 2d 608 (Fla. 3rd DCA 1986)) (allowing prejudgment interest but restricting it to date action commenced or date demand for payment made and rejecting entitlement to prejudgment interest from date of overpayment).[5] *See also Validsa, Inc. v. PDVSA Services, Inc.,* 424 F. App'x 862 (11th Cir. 2011) (affirming district court's denial of prejudgment interest where award would result in windfall because Validsa suffered no deprivation of funds of the type prejudgment interest is designed to remedy); *Flack v. Graham*, 461 So .2d 82 (Fla. 1984) (finding two innocent victims, the state and Flack, and deciding it would be grossly inequitable to make the state pay interest when

---

[5]  In *Ball*, the Florida court rejected the trustee's argument that it was entitled to interest from the date it overpaid the appellee, explaining that had the appellee become aware before the demand that it had been given money which did not belong to it then it would have retained the money wrongfully and from that time forward it would have had obvious obligations to return it and pay interest until it did.  *Ball*, 491 So. 2d at 610.

Flack has made a full recovery of her salary).  Balancing the equities in this particular case, as the

Eleventh Circuit dictates I must, I recommend the award of prejudgment interest be reduced from

the sum sought by the Receiver and that the Receiver should be awarded prejudgment interest from

January 13, 2010, the date the Receiver filed this action against Dancing $.  *See Blasland, supra*

(trial court has sound discretion to balance the equities); *Millenium, supra* ("Although it appears that

there is no Florida or Eleventh Circuit caselaw on point, there is extensive Florida caselaw making

the right to recover prejudgment interest subject to equitable considerations.").

### 5. prejudgment interest rate

The applicable interest rate is mandated by Fla. Stat. § 55.03.  The Florida Chief Financial

Officer sets the prevailing rates each year, and the new prevailing interest rate applies to the interest

accruing each year.

### D. Conclusion

For the reasons set forth herein, I RECOMMENDED that prejudgment interest be awarded

for the time period of January 13, 2010, the date of the filing of the complaint, through the date of

the judgment, January 23, 2013.  I also RECOMMEND that counsel be directed to compute the

prejudgment interest due and so notify the Court of their computations by written filing by April 10,

2015, with any objections to such computations due by April 24, 2015.

REPORTED in Tampa, Florida, on March 27, 2015.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

12

## <u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).


cc:     Hon. Elizabeth A. Kovachevich
        Counsel of Record

13